UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | No. 11 B 34774 |
| | ) | |
| STEPHEN and ANGELA BRISCO, | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |

## MEMORANDUM OPINION AND ORDER OVERRULING SMALL BUSINESS ADMINISTRATION'S OBJECTION TO CONFIRMATION

On August 25, 2011, the Debtors filed their joint petition for relief under chapter 13 of the Bankruptcy Code. Their schedules list themselves as titleholders and residents of real property located at 4153 W. 177th Street, Country Club Hills, Illinois and at 315 Yates Ave., Calumet City, Illinois. In their bankruptcy schedules, they listed three secured creditors holding first, second, and third mortgages on their residence, as well as two secured creditors holding first and second mortgages on their rental property. Simultaneously with filing of their petition, the Briscos filed their Chapter 13 plan, which was last modified on April 25, 2012, but is not yet confirmed.

JPMorgan Chase Bank, N.A. ("JPMorgan") holds a first mortgage lien on the residence and has a secured claim of $161,064.57 pursuant to its filed proof of claim. The United States Small Business Administration ("SBA") holds a second mortgage lien on the residence with a secured claim of $25,800 pursuant to a recorded mortgage. An appraisal on the residence was conducted on June 20, 2011 and valued the residence at $135,000. (12 A 463 Compl. Ex. C) The Briscos filed a separate adversary proceeding No. 11 A 02419 to determine the validity, extent, and priority of JPMorgan's lien on the residential property.

JPMorgan also holds a first mortgage lien on the rental property and has a secured claim of $213,829 pursuant to a filed proof of claim. The United States holds a second mortgage lien on the residence with a secured claim of $25,700 pursuant to a recorded mortgage. An appraisal on the rental property was conducted on June 13, 2011 and valued the rental property at $100,000. The Briscos filed a separate Adversary proceeding No. 11-02657 to determine the validity, priority and extent of JPMorgan's lien on the rental property. On February 10, 2012, a final consent judgment was entered against JPMorgan reducing the value of its secured claim

from $213,829 to the valuation of the collateral rental property, i.e., $100,000, and reclassifying the undersecured portion of the claim as general unsecured.

The Briscos previously filed two adversary proceedings to void the liens of the SBA, the junior mortgagee, and classify its claims as unsecured claims under 11 U.S.C. § 506(a) and (d). Those proceedings were dismissed as failing to state a claim upon which relief could be granted because the theory of those cases necessarily rested on a requirement that a claim would have been filed by or on behalf of the SBA.

The deadline for filing of claims by governmental entities in this case was February 21, 2012. The SBA did not file a proof of claim regarding either the residence or the rental property, nor did the Briscos file proofs of claim on behalf of the United States as permitted by the Bankruptcy Code under 11 U.S.C. § 501(c). Under Fed. R. Bankr. P. 3002(c) a proof of claim of a governmental unit is timely filed if filed not later than 180 days after the date of the order for relief. Since the case was filed on August 25, 2011, the 180 day period has now expired. SBA argues that because no proof of claim was filed by or on behalf of SBA and its mortgages have not been invalidated, the confirmation of the Debtors' modified plan cannot affect the SBA's *in rem* claim against the 177th Street and Yates Properties.

The Debtors' modified plan provides for the SBA's claims in the following way:

[] Other secured claims treated as unsecured. The following claims are secured by collateral that either has no value or that is fully encumbered by liens with higher priority. No payment will be made on these claims on account of their secured status, but to the extent that the claims are allowed, they will be paid as unsecured claims, pursuant to Paragraphs 6 and 8 of this section.

[] Unsecured claims filed after the claim bar date are hereby disallowed and shall not be paid by the Chapter 13 Trustee.

[] Due to lack of equity in debtor's [sic] primary residence located at 4153 West 77th [sic] Street, Chase Mtg second lien (Account # 8373) and Small Business Administration's third lien (Account #6009) will be paid as unsecured creditors. Chase Mtg and Small Business Administration shall retain their junior liens . . . on debtor's [sic] real property until the earlier of: a) the payment of the underlying debt under nonbankruptcy law; or b) discharge under section 1328, at which time the lien shall be deemed released.

[]Due to lack of equity in debtor's [sic] rental property located at 315 Yates Ave, Small Business Administration's second lien (Account #6000) will be paid as an unsecured creditor. Small Business Administration shall retain its junior lien . . . on debtor's [sic] real property until the earlier of: a) the payment of the underlying debt under nonbankruptcy law; or b) discharge under section 1328, at which time the lien shall be deemed released. (Dkt. 73)

2

Neither the SBA or the Debtors have filed a proof of claim on the SBA's behalf. As noted in the Memorandum Opinion dismissing the adversary proceedings, the SBA is unable to receive a distribution under the Modified Plan due to the lack of an allowed claim. (12 A 462, Dkt. No. 31, at 11; 12 A 463, Dkt. No. 29, at 11)

In their Adversary Complaints, the Debtors sought to strip-down the SBA's liens pursuant to 11 U.S.C. § 506(a), (d)[1] and 1322(b)(2). It was held in the Opinion dismissing those proceedings that the Debtors could not rely on those provisions because no claim was filed by or on behalf of the SBA under § 502. (12 A 462, Dkt. No. 31, at 10, 13; 12 A 463, Dkt. No. 29, at 10, 13) In deciding the SBA's present objection to plan, although not expressly specified in their Amended Plan, the Debtors must rely on 11 U.S.C. § 1327, which dictates the effects of confirmation on claims and interests against the estate and 11 U.S.C. § 1328, which specifies the effect of discharge on claims and interests against the estate. Applicable provisions are not the same as in the Adversaries, and the ruling here is necessarily different.

## DISCUSSION

### Adequacy of Notice to SBA

SBA first objects because it did not receive notice of the Debtors' bankruptcy case or the claims bar date at the address listed on the relevant mortgage instruments or pursuant to Fed. R. Bankr. P. Instead, the Debtors' sent notice to the address listed on the SBA's website. The SBA contends that failure to receive notice of the claims bar date excuses it from the deadline reported in notices sent to the wrong address.

Under Fed. R. Bank. P. 2002(b) and (f), all listed creditors are entitled to notice of the bar date for filing claims and of the chapter 13 confirmation hearing. When the United States is a creditor, Fed. R. Bankr. P. 2002(j) requires that "copies of notices required to be mailed to all creditors under this rule shall be mailed . . .(4) if the papers disclose a debt to the United States other than for taxes, to the United States Attorney for the district in which the case is pending and to the department, agency, or instrumentality of the United States through which the debtor became indebted . . . ."

The Debtors scheduled the SBA for nontax liabilities. Thus, they were required to mail notice of the claims bar date and the confirmation hearing to the U.S. Attorney for the Northern

---

[1] By recent decision, § 506(d) is not appropriate. *See Ryan v. United States (In re Ryan)*, 2013 U.S. App. LEXIS 13710 (7th Cir. July 8, 2013).

3

District of Illinois. Because no such notice was sent, the SBA correctly states that the government is excused from the deadline reported in the notice. *In re Interstate Cigar Co.*, 150 BR. 305, 306 (Bankr. E.D.N.Y.1993) (overruling objection to late filed claim because creditor, a wholly-owned U.S. government corporation, did not receive notice as required by Fed. R. Bankr. P.); *In re Divco Philadelphia Sales Corp.*, 60 B.R. 323, 324 (Bankr. E.D. Pa. 1986) (same). However, the SBA has not filed a claim subject to a timeliness objection by Debtors.

The SBA also argues that Debtors' notice sent to its local office was similarly ineffective. Each mortgage executed by the Debtors and the SBA contained the following language regarding notice: "any written notice to be issued to the mortgagee shall be addressed to the mortgagee at 801 Tom Martin Drive Suite 120, Birmingham, AL 35211." On August 26, 2011, the court served notice upon the Debtors' creditors that February 21, 2012 was the last date for the government to file its proofs of claim. (Dkt. No. 10) The bankruptcy court clerk certified to the mailing the claim bar date to the SBA at 500 W. Madison St., Suite 1250, Chicago, IL 60611-2511. (*Id.*) The certification does not recite that any notice was mailed to the SBA at the 801 Tom Martin Drive address. Therefore the SBA was improperly noticed and it did not receive notice of the claims bar date. Since the SBA did not receive adequate notice then it would not be bound by the claims bar date if it had filed a claim after that date.

However, the SBA's failure to file a timely claim is not a basis relied on for voiding its mortgage. The Debtors' modified plan does not seek to void the SBA's liens on the basis of a late filed claim. Rather, the Debtors' seek to void those liens on the basis that they are not supported by equity in the property.

### **Effect of Confirmation on the SBA's Liens**

Section 1325(a) of the Bankruptcy Code lists standards for confirmation of a chapter 13 plan. A bankruptcy judge must confirm any chapter 13 plan meeting all criteria for confirmation prescribed by section 1325(a), except as provided in section 1325(b). *Collier on Bankruptcy* ¶ 1325.01. Confirmation is not discretionary once these criteria have been satisfied. *In re Estus*, 695 F.2d 311, 314 (8th Cir. 1982); *In re Alexander*, 670 F.2d 885, 888 (9th Cir. 1982). The court may not add additional requirements for confirmation when the standards of section 1325(a) have been met and no objection has been filed under section 1325(b). *Petro v. Mishler*, 276 F.3d 375, 378 (7th Cir. 2002) "Any material way in which the plan is not in compliance with section

1325, any other provision of chapter 13, or any other applicable provision of title 11 is a sufficient basis upon which to object to its confirmation." *Collier on Bankruptcy* ¶ 1324.03.

The SBA's objection is not brought under § 1325(b) and does not clearly specify how the Debtors' plan violates any part of § 1325(a) or any other provision of the Bankruptcy Code. Rather, in its objection, the SBA contends that the Debtors plan to re-vest title to the Properties free and clear of the SBA's mortgages is inconsistent with the principle that "liens pass through bankruptcy unaffected." *See In re Penrod*, 50 F.3d 459 (7th Cir. 1995). The SBA further argues that the Debtors cannot void its mortgages through their plan of reorganization because the SBA has not filed a proof of claim. Arguably, this question is premature as the Debtors' plan has not been confirmed. The SBA asks in effect for ruling on the effect of confirmation of Debtors' plan before that plan has been confirmed. The SBA objection can be characterized as questioning the effect of confirmation as provided in § 1327(c) of the Bankruptcy Code. That provision states that "[e]xcept as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section [upon plan confirmation] is free and clear of any claim or interest of any creditor provided for by the plan."

The SBA essentially disputes that the Properties in question will vest free and clear of its liens upon confirmation of the plan. It cites *In re Penrod*, 50 F.3d 459 (7th Cir. 1995) for the argued proposition that stripping its liens through a chapter 13 plan is inconsistent with the principle that its "liens pass through bankruptcy affected." The *Penrod* Opinion did not involve a chapter 13 plan. It involved a confirmed chapter 11 plan that included a provision for payment of a secured creditor's claim but failed to provide whether or not that creditor's lien was extinguished. *Id.* at 461. That Opinion recognized that in chapter 11 a secured creditor may bypass a debtor's bankruptcy case so that its liens pass through unaffected. *Id.* However, the Opinion also recognized that a secured creditor "may be dragged into the bankruptcy involuntarily." *Id.* at 462. Furthermore, the Opinion noted that there are circumstances in which a secured creditor "may even be compelled to surrender [its] lien without receiving *anything* in return." *Id.* (emphasis in original). Accordingly, the Opinion stated, "[b]y now it should be clear that like most generalizations about law, the principle that liens pass through bankruptcy unaffected cannot be taken literally." *Id.*

The Opinion in *Penrod* further considered whether liens survive chapter 11 reorganization when the plan is silent as to their treatment. *Id.* The Opinion stated that under 11

5

U.S.C. § 1141(c), the default rule is that secured claims provided for in a plan are extinguished. *Id.* After reasoning that liens are encompassed in the term "interest," the Opinion stated that liens are extinguished provided that the holder of the lien "participated" in the reorganization. *Id.* at 463. Under the Opinion's reasoning, a creditor's failure to "participate" in the reorganization might mean that its lien would not be "property dealt with by the plan."*Id.* The *Penrod* Opinion further indicated a few ways that a creditor can "participate" in a plan of reorganization, stating that:

> [a creditor] may participate in the bankruptcy in order to try to get the automatic stay lifted to the extent of allowing him to enforce [its] lien . . . . [A creditor] may want to participate in the bankruptcy proceeding (and so may decide to file a claim) simply because [it] wants to make sure that the debtor's estate is not administered in a way that will diminish the value, as distinct from threatening the existence, of [its] lien.

*Id.* at 462.

*Penrod*, as noted, involved a chapter 11 debtor and construed provisions within that chapter. Section 1327(c) and section 1141(c) do contain similar language. Section 1327(c) of the Bankruptcy Code provides:

> Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

Section 1141(c) states, in relevant part:

> Except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors . . . .

However, one Fourth Circuit opinion has pointed out that the foregoing provisions are distinct and precedent construing one provision cannot be used to construe the other. In *Universal Suppliers, Inc. v. Regional Bldg. Sys. Inc (In re Regional Bldg. Sys. Inc.)*, 254 F.3d 528, 529–30 (4th Cir. 2001), a Fourth Circuit panel considered the effect of confirmation of a chapter 11 plan where a creditor failed to object to confirmation but later sought to enforce its pre-bankruptcy lien and sought to amend its proof of claim post-confirmation. That creditor received notice of the bankruptcy, filed proofs of claim, and even participated on the official committee of unsecured creditors. *Id.* at 530. The Appeals Court upheld the decision of the

bankruptcy judge who held that the creditor's lien rights were extinguished by confirmation of the chapter 11 debtor's plan. *Id.* at 530, 533. The *Regional Building Systems* Opinion reasoned that all elements of § 1141(c) were satisfied such that "all property dealt with by the plan is free and clear of all claims and interests." *Id.* Accordingly, the Opinion held that the creditor's lien was extinguished by operation of law upon confirmation of the debtor's plan. *Id.* at 531 (citing *Matter of Penrod* 50 F.3d 459, 463 (7th Cir. 1995)).

The creditor in *Regional Building Systems* argued that confirmation of a chapter 11 plan does not extinguish a lien where the plan makes no mention of the lien. *Id.* The creditor relied on a chapter 13 opinion and argued that § 1327(c) is identical to § 1141(c) and claimed that the only difference between the two provisions is that § 1327(c) uses the terms "provided for" by the plan while § 1141(c) uses the terms property "dealt with" by the plan. *Id.* at 532. Therefore, the creditor argued, the terms are synonymous such that opinions construing one provision could be used to construe the other.

The Opinion in *Regional Building Systems* disagreed, stating that the provisions of § 1327(c) and § 1141(c) sensibly use different language because chapter 11 and chapter 13 serve different purposes. *Id.* For example, the Opinion noted that a chapter 13 debtor can choose not to deal with certain secured claims under §§ 1325(a)(5) and 1322(a). *Id.* Under § 1327(c) those claims pass through the bankruptcy unaffected. *Id.* In addition, chapter 13 creditors do not vote on a chapter 13 plan. *Id.* In contrast, chapter 11 contains no provision allowing a debtor to ignore secured claims. *Id.* Furthermore, chapter 11 requires all outstanding claims to be identified by the plan or confirmation order. *Id.* at 533.

The SBA contends that it has not "participated" in the Debtors' bankruptcy. However, as just noted, the relevant inquiry is whether the Debtors' plan has "provided for" its claim such that the property vesting in the Debtors is free and clear of the SBA's claims. *See* § 1327(c).

Section 1327(c) does not define "provided for." However, in *Rake v. Wade*, 508 U.S. 464, 124 L. Ed. 2d 424, 113 S. Ct. 2187 (1993), the Supreme Court defined "provided for," as used in 11 U.S.C. § 1325(a)(5), as "to make a provision for or stipulate to something in a plan," *Rake*, 508 U.S. at 473 (internal quotation marks omitted), and, as used in 11 U.S.C. § 1328(a), as "makes provision for, deals with, or even refers to a claim," *Rake*, 508 U.S. at 474 (internal quotation marks omitted).

The parties' briefs did not cite any precedent from the Seventh Circuit construing that phrase and none has been found. However, the Fourth Circuit, in *Cen-Pen Corp. v. Hanson*, 58 F.3d 89, 94 (4th Cir. 1995) held that, "as a general matter, a plan 'provides for' a claim or interest [under § 1327(c)] when it acknowledges the claim or interest and makes explicit provision for its treatment." That Opinion also held that "'even where confirmed without objection, a plan will not eliminate a lien simply by failing or refusing to acknowledge it or by calling the creditor unsecured.'" *Id.* (quoting *In re Beard*, 112 B.R. 951, 954 (Bankr. N.D. Ind. 1990)).

In this case, the Debtors' plan proposes to treat the SBA's liens as unsecured.[2] Under the plan, unsecured creditors are to be paid not less than 59% of their allowed amount. However, as clarified in the Memorandum Opinion dismissing the Debtors' adversary proceedings against the SBA, the SBA's claims cannot be allowed because no claim has been filed and the SBA cannot be paid on its claim pursuant to the Debtors' plan. Despite this result, the SBA claims have been "provided for" by the Debtors' plan. That plan acknowledges the SBA's interests and specifies its treatment. Therefore, the Debtors' plan "provides for" the SBA's liens within the meaning of § 1327(c).

Furthermore, the *Dixon* Opinion reasoned that debts may be "provided for" in a plan of reorganization even where no proof of claim has been filed on the debt. *Dixon v. IRS (In re Dixon)*, (B.A.P. 10th Cir. 1998). In *Dixon*, the IRS appealed a bankruptcy judge's ruling that the IRS had to return money it collected from the debtors after they had received a discharge in Chapter 13. *Id.* at 150. The debtors listed a debt owed to the IRS and proposed to pay the debt as an unsecured priority claim but did not file a proof of claim for the IRS. *Id.* at 151. Nor did the IRS file its own proof of claim in that case. *Id.* Because no proof of claim was filed, the IRS claim was not an allowed claim able to receive payments under the debtors' plan. *Id.* The IRS

---

[2] The SBA disputes its treatment as an unsecured creditor, arguing that because no claim has been filed the Debtors may not rely on § 506 to determine its secured status. The SBA is correct because as stated in the Memorandum Opinion dismissing the Debtors' adversary proceedings, determination of secured status under § 506 applies only to allowed claims. To be an allowed claim, a claim must first be filed under § 502. (12 A 462, Dkt. No. 31; 12 A 463, Dkt. No. 29) Nevertheless, categorizing its liens as secured does not change the result in this case. Although secured creditors will be paid in full under the Debtors' plan, the SBA would still be ineligible to receive payments under the plan because no proof of claim was filed for its claims. Fed. R. Bankr. P. 3021. Moreover, debtor does not now rely on § 506.

therefore did not receive any payments under the plan. *Id.* The IRS argued in part that its failure to file a claim meant that its debt would survive the chapter 13 discharge. *Id.* at 153.

The *Dixon* Opinion acknowledged that there is no provision in the Code that expressly provides for discharge of un-filed claims. *Id.* Nevertheless, the Opinion found support for discharge of the IRS' claims in several provisions of the Code. *Id.* It reasoned as follows:

> Section 1328(a) declares, with certain exceptions that do not include any taxes, that a debtor who has completed a chapter 13 plan is to receive a discharge of all debts "provided for by the plan or disallowed under section 502." The Debtors' plan provided for the IRS's claim to be paid, and it was not paid only because no proof of claim was filed. Except when a lack of notice to the creditor is involved, the reported decisions considering the question (in addition to those of the Bankruptcy Court in this case) have ruled such a claim is nevertheless "provided for" by the plan within the meaning of § 1328(a) and is therefore discharged. Furthermore, although it did so after the time for filing claims had expired in this case, Congress amended § 502(b) to overrule cases that had held a claim could not be disallowed in a chapter 13 case on the ground the proof of the claim was not timely filed. So the IRS is asking us to believe that even though Congress enabled taxing authorities to obtain full payment simply by filing a proof of claim and, in 1994, directed the courts to disallow, and thus discharge, the taxes if a late proof of claim is filed for them, Congress also believed the Bankruptcy Code already allowed and intended for it to continue to permit taxing authorities who file no proof of claim at all to wait until the bankruptcy case is over and then try to collect from the debtors. And, rather than doing this in a straightforward manner by including the taxes in § 1328(a) where it specified other debts that would not be discharged upon completion of a chapter 13 plan, Congress instead created this alternate remedy through silence. We are not convinced. Instead, we believe Congress assumed unfiled claims would be disallowed and discharged, just as late-filed ones now clearly are.

*Id.* at 154 (citations omitted). *See also, Thibodaux v. United States (In re Thibodaux)*, 201 B.R. 827, 830-31 (Bankr. N.D. Ala. 1996) (IRS claim); *In re Sorge*, 149 B.R. 197, 202 (Bankr. W.D. Okla. 1993) (IRS claim); *Border v. IRS (In re Border)*, 116 B.R. 588, 592-95 (Bankr. S.D. Ohio 1990); *Workman v. United States (In re Workman)*, 108 B.R. 826, 830 (Bankr. M.D. Ga. 1989); *see also Hairopoulos v. United States (In re Hairopoulos)*, 118 F.3d 1240, 1243-46 (8th Cir. 1997) (stating that a plan may "provide for" tax claim without specifically naming governmental creditor, but holding claim at issue could not be treated as "provided for" because creditor does not receive proper notice of chapter 13 proceedings). The SBA has not successfully distinguished that case or questioned its reasoning. And the SBA in this case has received ample actual notice of the bankruptcy case of these creditors.

## CONCLUSION

For reasons stated above it is Ordered that, the SBA objection to Debtors' plan is overruled and Debtors' modified plan of reorganization will be confirmed in the absence of any other objection.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 20 day of August, 2013.